**FILED**
**CLERK**

5/2/2014 12:40 pm

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

HIGHBORNE EQUITIES, LLC,

                         Plaintiff,

    -against-

MOBIUS DESIGN GROUP INC., VICKI
SHAND-HORN and ROBERT HORN
a/k/a BOB HORN,

                         Defendants.
-------------------------------------------------------------------x

Civil Action File No.
2:14-CV-01629 (JFB/ARL)

**COMPLAINT**

    Plaintiff, as and for its complaint herein, through its attorneys, Westerman Ball Ederer Miller Zucker & Sharfstein, LLP, states as follows:

## Introduction

    1.     This is an action brought by a homeowner for money damages based on defendants' fraudulent inducement and breach of contract. Due to defendants' inability to perform the services they had undertaken and promised to perform for plaintiff, as well as defendants' fraudulent representations regarding their ability and intention to perform such services, plaintiff has suffered damages in excess of $800,000.

## Parties

    2.     Plaintiff Highborne Equities LLC ("plaintiff") is a limited liability company organized under the laws of the State of New York with its principal place of business in the State of New York.

    3.     Upon information and belief, defendant Mobius Design Group ("Mobius") is a corporation organized under the laws of the State of Florida with its principal place of business in the State of Florida.

1

983908

4. Upon information and belief, defendants Vicki Shand-Horn and Robert Horn (together, the "Horn Defendants") are citizens of the State of Florida who reside in Florida. Upon information and belief, the Horn Defendants are owners and officers of defendant Mobius.

**Jurisdiction and Venue**

5. This action was commenced by a Summons with Notice on February 21, 2014 in the Supreme Court of the State of New York, County of Nassau (Index No. 600822/2014).

6. On or about March 11, 2014, defendants filed a petition to remove this action to this Court, pursuant to 28 USC § 1441(a), asserting that this Court has original jurisdiction of this matter based on diversity of citizenship under 28 USC § 1332(a).

7. Plaintiff does not dispute that diversity exists under 28 USC § 1332(a), that the matter in controversy exceeds $75,000, and that this Court has original jurisdiction of the action.

8. Venue exists in this Court by reason of 28 USC § 1391(b)(2) in that a substantial part of the events and omissions given rise to plaintiff's claims occurred in Nassau County, New York.

**Facts**

9. In 2013, plaintiff purchased a residence located at 1 Hidden Pond Drive, Old Westbury, New York ("the Residence"), where plaintiff's principal, Adam Katz ("Katz"), now lives with his family.

10. When plaintiff purchased the Residence, it was a large structure situated on over two acres of land in a desirable neighborhood of Nassau County. However, the Residence required extensive upgrades and renovations. These renovations were essential to plaintiff's principal --- a successful businessman and the chief executive of numerous companies --- because he frequently entertains clients and potential customers at his home and it is important that the Residence be of high quality and project a certain image and standard.

2

11.     Currently, after extensive renovations, the Residence has more than eleven thousand square feet of living space, seven bedrooms, numerous interior amenities such as a spa pool and deck area, sauna, gym, home theater and yoga room, plus exterior amenities such as a swimming pool and hot tub.

12.     As part of these renovations, plaintiff desired to install a comprehensive and state-of-the-art integrated electronic system to control many of the operating functions and components in the Residence including, but not limited to, the climate control system, lighting, audio/visual components, the outdoor swimming pool and the security system.

13.     For these purposes, plaintiff chose to install a system manufactured by Crestron Electronics Inc. ("Crestron" or "Crestron System") because it is a high-quality sophisticated system produced by a well-established company . Katz had experience with the Crestron System in other locations. Also, an affiliate of Katz ("Katz Affiliate") was authorized by Crestron to purchase Crestron material and equipment at lower prices than those offered to the general public.

14.     In order to install a Crestron System in the Residence, plaintiff required expert assistance from a Crestron-authorized company (a) to design and engineer the precise design of the system that should be installed in the Residence in order to meet plaintiff's needs; (b) to purchase the Crestron parts and material necessary for the designed system; and (c) to program the software of the Crestron System so that it would perform as necessary in the Residence.

15.     Defendants advised plaintiff that Mobius was an authorized Crestron agent and that they could provide the services which plaintiff needed.

16.     Plaintiff retained defendants to provide it with the necessary skills, assistance and services required to design, install, purchase and program the appropriate Crestron System in the Residence.

3

17.     More specifically, beginning in July 2013, plaintiff's principal (Katz) had numerous in-person meetings with Mobius' principals (*i.e.*, the Horn Defendants) to discuss the general parameters of the electronic system and controls needed for the Residence and the manner in which these electronic systems and controls should function.

18.     During these meetings and discussions, plaintiff advised defendants that the Crestron System in the Residence would be required to control the climate control system, lighting, the outdoor swimming pool, the audio-visual equipment in the Residence and the security system.

19.     During these meetings, defendants agreed with plaintiff to engineer, design, install and program a Crestron System in the Residence capable of performing the functions which plaintiff required.  Defendants further represented that they had the skills, experience and capabilities necessary to properly provide these services.

20.     During these meetings, plaintiff further advised defendants that plaintiff wanted to install a home theater in the Residence.  Defendants agreed to do so, and expressly represented that they had prior experience in the design and installation of home theaters and had the necessary skills and capabilities to design, engineer, program and install a home theater.

21.     During these meetings, plaintiff expressly advised defendants that, through the Katz Affiliate, it was able to purchase Crestron materials and equipment at a discounted price not generally available to the public, and that all Crestron material necessary for the Residence should be ordered through the account of the Katz Affiliate, not defendants' account. Defendants agreed that they would do so.

22.     During these meetings, plaintiff further expressly advised defendants that the Katz family intended to move into the Residence in or about the Fall of 2013, that all the renovations were going to be accomplished on an expedited basis, and that the design and installation of the

4

Crestron System for the Residence likewise needed to be completed on an expedited basis, and certainly within a few months.  Defendants agreed that they could and would meet this schedule.

23.    Defendants commenced work at the Residence pursuant to their agreement with plaintiff in or about July 2013.

24.    In subsequent months, defendants breached their agreement with plaintiff by failing to provide a Crestron System in the Residence which performed the functions which plaintiff required.  Among other things:

(a)  They ordered excessive and unnecessary Crestron materials and equipment.

(b)  They ordered certain materials and equipment from Crestron on Mobius' own account in lieu of the agreement to purchase through the Crestron account of the Katz Affiliate.

(c)  The audio/visual components that defendants installed did not work properly and quickly began to break down.

(d)  They failed to produce the necessary design and engineering plans for the home theater, despite repeated demands by plaintiff and repeated false assurances from defendants.

(e)  They failed to design, engineer or install an HVAC control system in the Residence that worked.

(f)  They failed to design, engineer or install a security control system in the Residence that worked.

(g)  They failed to install a lighting control system in the Residence that worked.

(h)  They failed to install a system to adequately control the heating and other functions of the outdoor swimming pool.

5

(i) They failed to provide electrical line diagrams and other plans in accordance with industry standards.

(j) They failed to properly program the Crestron-system for the Residence. In fact, the Crestron-related software that had been installed in the Residence was still only approximately 20% complete more than six months after defendants began their work.

25. In addition to the above, defendants' billing was sloppy and sporadic; they failed to respond to numerous written requests for information; and they failed to provide schedules of work in progress and of projected completion dates.

26. As a result of defendants' inability and failure to satisfactorily perform the agreed-upon work, plaintiff notified them on or about January 24, 2014 that it was discontinuing their services.

27. Notwithstanding the defective performance and non-performance of defendants' work at the Residence, defendants billed plaintiff, prior to having their services terminated, the sum of $385,044.15 for their services, which sum plaintiff paid, and defendants accepted.

28. Thereafter, on or about February 14, 2014, *i.e.*, about three weeks after their services were terminated, defendants' lawyer sent a letter to plaintiff's principal attaching a list of allegedly additional unpaid invoices for defendants' work at the Residence --- which included invoices that had never previously been sent to plaintiff --- claiming that plaintiff owed approximately $150K more for defendants' work at the Residence.

## As And For A First Cause Of Action
### (Breach of Contract)

29.     Plaintiff repeats the allegations of paragraphs 1-28 as if fully set forth herein.

30.     Defendants breached their agreement with plaintiff by failing to provide the agreed-upon services at the Residence, as described more fully above.

31.     Plaintiff has been damaged by defendants' breach of the parties' agreement in that, among other things: (a) it paid for substantial equipment that was unnecessary for the services and functions needed in the Residence; (b) it paid higher prices for certain materials not purchased through the Katz Affiliate, contrary to plaintiff's directions and the parties' agreement; (c) it paid for services by defendants which had no value; (d) by reason of the delay caused by defendants' breach, plaintiff has incurred additional costs to re-do and/or complete defective work; and (e) its use of the Residence has been substantially delayed and interfered with.

32.     Plaintiff's damages will be determined by a factfinder after trial but, upon information and belief, will exceed $800,000.

## As And For A Second Cause Of Action
### (Fraudulent Inducement)

33.     Plaintiff repeats the allegations of paragraphs 1-32 as if fully set forth herein.

34.     Plaintiff was fraudulently induced to enter into its agreement with defendants by misrepresentations made by defendants.  Among these misrepresentations were the following:

> (a) That the defendants had the requisite skills, experience and qualifications to properly design, engineer, install and program a Crestron System suitable for the Residence;

7

(b) That the defendants would purchase all necessary Crestron materials and equipment through the Katz Affiliate rather than through their account;

(c) That the defendants would and could produce the necessary design and theater plans for a home theater in the Residence;

(d) That the defendants would provide plaintiff with the program codes for the Crestron System installed in the Residence; and

(e) That the Crestron System could and would be designed, engineered, installed and programmed within a matter of months.

35. Upon information and belief, these representations were false when made and were known by defendants to be false.

36. But for these misrepresentations, plaintiff would not have entered into its agreement with the defendants.

37. In fact, upon information and belief, these misrepresentations were intentional, deliberate and malicious, and were part of the practice and pattern of defendants in conducting their business.

38. Thus, a company affiliated with plaintiff's principal also retained defendants to provide certain Crestron-related services on a yacht (the *Serque*) owned by that affiliate and used by Katz.

39. Defendants' services in providing those services for the *Serque* were beset by the same problems as the services they provided to plaintiff in connection with the Residence --- *i.e.* misrepresentation as to defendants' capabilities; misdiagnosis of problems and remedies; inability to achieve a properly-functioning Crestron-driven system; overbilling; deceptive billing; and seeking payment for invoices that were never sent to plaintiff.

8

40.    By reason of defendants' misrepresentations, plaintiff has been damaged in an amount to be determined at trial, but believed to be in excess of $800,000.

### As And For A Third Cause Of Action
### (Unjust Enrichment)

41.    Plaintiff repeats the allegations of paragraph 1-40 as if fully set forth herein.

42.    Plaintiff has paid defendants the sum of $385,044.15 for their work and services at the Residence.

43.    Defendants' work and services of the Residence were either negligently performed, not performed at all, and/or defective, and provided no value to plaintiff.

44.    By reason of plaintiff's payment to them, defendants have been unjustly enriched in the amount of $385,044.15.

**WHEREFORE,** it is respectfully requested that the Court grant the following relief:

(a) On the First Cause of Action, a money judgment in an amount to be determined after trial, but at least $800,000;

(b) On the Second Cause of Action, a money judgment in an amount to be determined after trial, but at least $800,000, plus punitive damages;

(c) On the Third Cause of Action, a money judgment in the amount of $385,044.15;

together with such other and further relief as this Court finds just and proper, including but not limited to an award for costs, disbursements, expenses and attorneys' fees.

Dated: Uniondale, New York
      May 1, 2014

                        WESTERMAN BALL EDERER
                        MILLER ZUCKER & SHARFSTEIN, LLP

                        By: _____
                             Greg S. Zucker, Esq. (GSZ-0011)
                             Richard Gabriele, Esq. (RJG-5179)
                             1201 RXR Plaza
                             Uniondale, New York 11556
                             (516) 622-9200

                        *Co-Counsel for Plaintiff*

**TO:**    Lynn Gartner Dunne & Covello LLP
        By: John W. Dunne, Esq.
        300 Old Country Road, Suite 103
        Mineola, New York 11501
        Tel. No. (516) 742-6200
        *Counsel for Defendants*

        John Ramsen, Esq.
        8300 Republic Airport
        Farmingdale, New York 11735
        Tel. No. (516) 466-6680, ext. 109
        *Co-Counsel for Plaintiff*